# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**OTIS ANDERSON**
       **Petitioner-defendant,**

   **v.**                                    **Case No. 21-C-1350**
                                                  **(Criminal Case No. 19-CR-227)**

**UNITED STATES OF AMERICA**
       **Respondent-plaintiff.**

## RULE 4 ORDER

Petitioner Otis Anderson moves, pursuant to 28 U.S.C. § 2255, to vacate the sentence imposed on his guilty pleas to armed bank robbery and felon in possession of a firearm. For the reasons that follow, I deny his motion and dismiss this action.

### I. FACTS AND BACKGROUND

The underlying facts of the case are set forth in the factual basis section of the parties' plea agreement. Petitioner admitted that these facts were true and correct and established his guilt beyond a reasonable doubt:

> On October 25, 2019, at 1:50 p.m., Anderson robbed the Old National Bank, whose deposits were then insured by the Federal Deposit Insurance Corporation, at 790 N. Jefferson Street in Milwaukee, Wisconsin, at gunpoint. Two employees were working at the time of the robbery. No customers or security guards were present. Anderson entered the bank wearing a glove on his left hand, which he used to open the two doors to enter the bank interior. Anderson then pulled out a silver firearm with his right hand and told the teller, J.S., "This is a robbery." J.S. immediately moved to the teller station and opened the cash drawer. Anderson reached in and took $233.00 in United States Currency. He also grabbed a tracking device from the cash drawer baited with fake United States currency which automatically activates after it is removed from the bank. Anderson, however, threw the tracking device on the bank floor as he exited.

After a brief investigation, Anderson was identified as the robber. An examination of surveillance video from various businesses in close proximity to Old National Bank revealed an older white Mercedes Benz as a possible getaway car. Surveillance video shows this car parked near the bank at the time of the robbery and departing shortly afterwards. A search of a Department of Transportation database confirmed a white Mercedes Benz lists to Anderson at an address on N. 60th Street in Milwaukee, WI. On October 25, 2019, law enforcement also determined Anderson was on state supervision. That same day, officers interviewed Anderson's state probation agent who identified him in photographs from the robbery. In a lineup and photo array conducted shortly after the robbery, Anderson was also identified by both bank employees as the robber. Anderson's probation agent further stated that Anderson lived with his girlfriend on N. 60th Street in Milwaukee, WI.

. . .

On or about October 27, 2019, law enforcement set up surveillance at the N. 60th Street address, which is a multiple unit apartment building. On October 29, 2019, a Nissan Altima listing to a female at the same N. 60th Street apartment listed for Anderson was observed with the engine running in a parking space behind the apartment building. Officers later identified the driver of the car as Anderson. Anderson left the location in the Nissan Altima and a marked squad attempted to stop his car in the 5100 block of Nash Street in Milwaukee, WI. Anderson pulled over as if complying with the stop, but then rapidly accelerated from the area. Officers pursued Anderson for more than eleven minutes, reaching speeds up to 65 miles per hour while weaving in and out of residential neighborhoods. Anderson finally pulled over in the 4700 block of N. 48th Street in Milwaukee, and was arrested. Anderson then volunteered to officers that a firearm was in the glove compartment. A search of the Nissan Altima revealed a loaded, silver, Canik TP9, 9mm semi-automatic firearm with serial number 13A103386 in the locked glove box. ATF later determined that the gun was manufactured in Turkey. Anderson was also prohibited from possessing any firearm, as he knew he had been previously convicted of multiple felony offenses punishable by more than one-year imprisonment.

On October 29, 2019 and November 1, 2019, Anderson provided *Mirandized* statements to law enforcement admitting to the armed bank robbery at Old National Bank. Anderson stated he drove his white Mercedes Benz to commit the robbery and that he walked away with under $200 in United States Currency. Initially, he claimed he received the firearm in the Nissan Altima sometime after the robbery from a subject named Lamar. He also stated his fiancé knew nothing about the gun in her car. In his second interview, after being confronted by his fiancé's statement that she had the gun in her car for months, he admitted the firearm in the Nissan Altima had been around for a couple of months before he committed the instant robbery. In both interviews, Anderson stated that he did not use the firearm found in the Nissan Altima during the armed bank robbery. Anderson further stated he used the money from the robbery to

purchase alcohol and cigarettes.

(R. 18 at 3-5.)[1]

The government obtained a three-count indictment charging petitioner with the October 25, 2019, armed bank robbery of Old National Bank, 18 U.S.C. § 2113(a), (d); brandishing a firearm during a crime of violence, i.e., the October 25, 2019, bank robbery, 18 U.S.C. § 924(c); and felon in possession of a firearm based on the gun recovered from petitioner's car on October 29, 2019, 18 U.S.C. § 922(g)(1). Pursuant to an agreement with the government, petitioner pleaded guilty to armed bank robbery and felon in possession, with the § 924(c) count to be dismissed. (R. 18 at 5 ¶¶ 6, 8.) The parties agreed to jointly recommend a sentence of 108 months in prison. (R. 18 at 9 ¶ 21.)

I ordered a pre-sentence report ("PSR"), which calculated a guideline range of 110-137 months. In calculating the offense level on the robbery count, the PSR set a base offense level of 20, U.S.S.G. § 2B3.1(a); added 2 levels because the property of a financial institution was taken, U.S.S.G. § 2B3.1(b)(1), 5 levels because petitioner brandished a firearm, U.S.S.G. § 2B3.1(b)(2)(C), and 2 levels based on petitioner's reckless flight from the police, U.S.S.G. § 3C1.2; and then subtracted 3 levels for acceptance of responsibility, U.S.S.G. § 3E1.1, for a final offense level of 26. (PSR ¶¶ 19-25, 34-36.) The PSR calculated a criminal history category of V, based on three previous convictions for felon in possession of a firearm, each of which produced a prison sentence, and petitioner's status on extended supervision at the time he committed the instant offenses. (PSR ¶¶ 42-47.)

Petitioner did not object to the facts regarding the offense conduct, which were taken

---

[1]Unless otherwise noted, record citations are to the docket in the underlying criminal case, No. 19-CR-227.

near verbatim from the plea agreement (PSR ¶¶ 9-13), or to the guideline calculations set forth in the PSR. In the plea agreement, the parties had agreed to jointly recommend a base offense level of 20, plus 2 for the taking of funds from a financial institution and plus 5 for the brandishing of a firearm during the robbery. (R. 18 at 8 ¶ 16, 17.)

On November 17, 2020, I sentenced petitioner to the agreed term. A significant prison sentence was needed to protect the public and deter, given petitioner's record, which included three prior gun cases for which he served prison time, and his status on state supervision at the time he committed these offenses. Prison was also needed to provide just punishment and promote respect for the law, given the seriousness of the robbery offense and the danger petitioner created during the flight. I did take into account that no one was hurt during the robbery, petitioner did not take much money, he did not have a history of violence, and he did have some history of legitimate work and family support. I accordingly sentenced petitioner to 108 months in prison on each count concurrent, with the sentence also running concurrently with the state sentence after revocation he was then serving.[2]

Petitioner took no appeal. On March 21, 2021, he sent the court a letter asking for help in getting his sentence modified. (R. 26 at 1.) He referenced a statement made by the prosecutor during the sentencing hearing: "The government is also moving to dismiss Count 2, the 924(c). And the only reason that that count was dismissed as part of negotiations in this case, is that we couldn't prove that an actual firearm was involved in the offense." (R. 20 at 4:20-23.) In his letter, petitioner stated that he used a BB gun during the robbery. He further stated that his lawyer had declined to file a motion to modify the sentence. (R. 26 at 1.)

---

[2]The parties' agreement was silent about whether the sentence should be concurrent or consecutive. At the sentencing hearing, the government asked for consecutive time.

4

On November 22, 2021, petitioner filed the instant § 2255 motion, raising two grounds for relief. Ground one alleges "prosecutorial misconduct." The prosecutor charged petitioner with armed robbery but then stated there "was no proof of [a] gun. That was the reason count 2 was dismissed. But the points for my time conviction levels did not reflect the change from armed robbery to robbery of financial institution." (Case No. 21-C-1350, R. 1 at 6-7.) Ground two alleges ineffective assistance of counsel. "Knowing this my counsel . . . does not bargain for the sentence to be corrected. . . . Counsel has a responsibility to make sure in plea bargain that responsibility be met to render adequate assistance." (Id. at 7.) In his request for relief, petitioner states: "I would like my points be recounted to reflect that I did not use a real firearm and my levels be lowered to reflect so." (Id. at 10.)

## II. DISCUSSION

**A.    2255 Standards**

Section 2255 provides a basis for attacking a federal sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process. Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). "Hence, relief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (internal quote marks omitted).

Prisoners are generally barred from litigating under § 2255 claims that could have been raised directly. See, e.g., McCoy v. United States, 815 F.3d 292, 295 (7th Cir. 2016). This rule does not apply to claims of ineffective assistance of counsel, which may be raised initially under § 2255. See Massaro v. United States, 538 U.S. 500, 504 (2003). To establish a claim of ineffective assistance, the defendant must show (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To satisfy the first element of the test, the defendant must direct the court to specific acts or omissions by his counsel falling outside the wide range of professionally competent assistance. Blake v. United States, 723 F.3d 870, 879 (7th Cir. 2013). The court's assessment of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. To satisfy the second element, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. Id. Speculation based on hindsight is insufficient to show prejudice. Hicks v. United States, 886 F.3d 648, 652 (7th Cir. 2018).

**B.     Petitioner's Claims**

####  1.     Prosecutorial Misconduct

Petitioner claims that the prosecutor engaged in misconduct by convicting him of armed bank robbery despite the fact that the government could not prove he used a real firearm. He also appears to challenge the guideline enhancement for brandishing a firearm.

Petitioner pleaded guilty to armed bank robbery, admitting the facts set forth in the plea

6

agreement, including that he used a "silver firearm" to commit the crime. He makes no claim that his plea was involuntary. Petitioner also agreed, as part of his plea agreement, to recommend a 5-level enhancement for brandishing a firearm, and he filed no objection to the PSR's guideline calculation including this enhancement. At no time prior to judgment did he claim that he used a BB gun rather than a real one. This forecloses a collateral attack. See Davila v. United States, 843 F.3d 729, 732-33 (7th Cir. 2016) (holding that voluntary guilty plea foreclosed collateral attack based on subsequent developments potentially undermining § 924(c) conviction).

Even if his claim is not foreclosed, petitioner fails to demonstrate that the government acted improperly. That the government may not have been able to prove beyond a reasonable doubt that petitioner used a real firearm during the robbery does not undermine his conviction on count one. The armed bank robbery statute does not require that the defendant use a "real" firearm to carry out the offense, only that he use a "dangerous weapon," which courts have noted can be a "toy gun." United States v. Benitez, 731 Fed. Appx. 783, 792 (11th Cir. 2018) (citing United States v. Garrett, 3 F.3d 390, 391 (11th Cir. 1993)); United States v. Hargrove, 201 F.3d 966, 968 n.2 (7th Cir. 2000) ("A toy gun satisfies the armed bank robbery statute.").

To the extent petitioner challenges the guideline enhancement, he encounters several additional problems. First, errors in calculating the advisory sentencing guideline range generally may not be corrected in a § 2255 proceeding. See Hawkins v. United States, 706 F.3d 820, 823 (7th Cir. 2013), reh'g denied, 724 F.3d 915 (7th Cir. 2013). Second, just because the government could not prove that petitioner used a real firearm beyond a reasonable doubt does not mean it could not so prove by a preponderance of the evidence, the standard under

7

the guidelines. See U.S.S.G. § 6A1.3.[3] Finally, petitioner's sentence in this case did not turn on whether he used a real gun or a fake one in committing the robbery. Petitioner bargained for a 108-month sentence based on all of the facts of the case, including his reckless flight and his subsequent possession of a "real" firearm, and on review of the factors under 18 U.S.C. § 3553(a) I followed that recommendation. In sum, petitioner received the sentence he bargained for, and he cannot now show a miscarriage of justice based on the prosecutor's remark as to why the government dismissed count 2.

## 2. Ineffective Assistance

Petitioner's ineffective assistance argument also fails. Petitioner makes no claim that prior to sentencing he told his lawyer he did not use a real gun or that he asked his lawyer to challenge the firearm enhancement, yet counsel did nothing. See Koons v. United States, 639 F.3d 348, 353 (7th Cir. 2011) ("Koons fails to allege in his petition, accompanying affidavit, or anywhere else in the record that he even once told trial counsel the version of events . . . that he posits on appeal."). Rather, plaintiff relies on the prosecutor's remark at sentencing, but he fails to explain what counsel should have done at that point.[4] See Blake, 723 F.3d at 879 (indicating that the defendant must direct the court to specific acts or omissions constituting

---

[3]A finding that petitioner used a BB gun rather than a real firearm would have had a slight impact on the guideline range. Under U.S.S.G. § 2B3.1(b)(2)(D), use of a "dangerous weapon"— which, again, may include a fake gun, see U.S.S.G. § 1B1.1 cmt. n.1(E)—triggers a 4-level increase. This would have dropped the range to 100-125 months, still consistent with petitioner's 108-month sentence.

[4]He does not, for instance, argue that counsel should have filed a motion to correct the sentence under Fed. R. Crim. P. 35(a). That Rule is reserved for the correction of sentences resulting from arithmetical, technical, or other clear error. The issue petitioner raises here does not fall into that category. See United States v. Vinyard, 539 F.3d 589, 593-94 (7th Cir. 2008). Petitioner makes no claim that he told counsel to file a notice of appeal.

8

deficient performance).  Petitioner also fails to demonstrate prejudice.  There is no reasonable probability that the outcome would have been different had counsel made the argument petitioner now presents; the armed bank robbery conviction did not require use of a real gun, nor did the sentence turn on whether the gun was real or fake.

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion (R. 1) is denied, and this case is dismissed.  The clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that petitioner's motion to proceed in forma pauperis (R. 2) is denied as moot.  There is no filing fee for § 2255 actions in the district court, and petitioner identifies no other costs associated with the action he is unable to pay.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2255 petitioner.  In order to obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard for making a "substantial showing" is whether reasonable jurists could debate whether the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  For the reasons stated above, petitioner cannot make such a showing, so I decline to issue a COA.

Dated at Milwaukee, Wisconsin, this 30th day of November, 2020.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge